DEVAULT *v*. STATE OF INDIANA.

[No. 769S149. Filed August 24, 1970. No petition for rehearing filed.]

*Bernard M. Tetek, Gerald N. Svetanoff*, of Gary, for appellant.

*Theodore L. Sendak*, Attorney General, *Mark Peden*, Deputy Attorney General, for appellee.

JACKSON, J.—Appellant, J. N. Maroules, Sonia Moles and John Balenovich were charged by indictment in the Criminal Court of Lake County, Indiana, with the crime of conspiracy to commit forgery. The indictment in pertinent part reads as follows:

"The Grand Jurors of Lake County, in the State of Indiana, * * *, on their oaths present that on the 19th day of November, 1962, HAROLD F. DeVAULT was the duly elected, qualified and acting Trustee of Calumet Township, Lake County, Indiana; that JERRY N. MAROULES was then and there an owner of an interest in, a proprietor and manager of Public Super Market, Gary, Indiana; that SONIA MOLES and JOHN BALENOVICH were then and there employees of said office of Calumet Township Trustee, and that on said 19th day of November, 1962, all in said County and State aforesaid, they, the said HAROLD F. DeVAULT, JERRY N. MAROULES, SONIA MOLES and JOHN BALENOVICH did then and there unlawfully, knowingly and feloniously unite, combine, conspire, confederate and agree to and with each other for the object and with the unlawful and felonious intent to then and there unlawfully, feloniously, falsely and fraudulently make, assist in making, forge, counterfeit, utter, pass and publish as true,

and cause to be falsely made, forged, counterfeited, uttered, passed and published as true a certain record, order and authentic matter of a public nature, to-wit: a general purchase order for poor relief from said Calumet Township Trustee's office, purporting to have been receipted and signed by one JAMES MIXON to the Public Super Market, Gary, Lake County, Indiana, for the delivery of food and a payment of a sum of money, to-wit: $85.00, for which food said money was to be paid by Calumet Township, Lake County, Indiana, a body politic and corporate in the State of Indiana, which said false, forged and counterfeited and pretended purchase order is of the following tenor, viz: (The purchase order itself set out in the indictment is omitted because of the difficulty of reproducing the same in print) with intent then and there and thereby feloniously, falsely and fraudulently to defraud the said Calumet Township, Lake County, Indiana, said HAROLD F. DeVAULT, JERRY N. MAROULES, SONIA MOLES and JOHN BALENOVICH well knowing that the purported signature of the said JAMES MIXON was then and there forged, false and counterfeited and not the true signature of the said JAMES MIXON, and that said food was not in truth and fact delivered to or received by the said JAMES MIXON, as shown on said forged and false poor relief purchase order, then and there being contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state of Indiana."

Thereafter each of the defendants separately moved for separate trials and the prayer was granted.

Thereafter, the defendant DeVault filed a motion to take depositions of his co-defendants Maroules, Moles and Balenovich which petition was granted by the court.

The cause was set for trial with respect to the appellant for October 21, 1968, on which date appellant appeared in person and by counsel, waived arraignment and entered a plea of not guilty.

Trial by jury began on October 21, 1968, and ended on October 22, 1968. At the conclusion of the State's case in chief, the appellant moved for a directed verdict of not guilty which directed verdict the court refused to order. The defendant

did not put any witnesses on the stand and rested, and at which time the State rested.

The jury after deliberating returned its verdict, which in pertinent part reads as follows:

"WE, THE JURY, find the Defendant, HAROLD F. DeVAULT, Guilty, and that he shall be fined in the sum of $2,500.00 and be imprisoned in the State Prison for — years.

/s/ Vernon L. Wells
FOREMAN

Filed in Open Court October 22, 1968."

Thereupon the court ordered that the Probation Department of the court should make a pre-commitment investigation as to said defendant and a written report of such investigation be filed with the court.

Thereafter, on the 31st day of October, 1968, the prosecuting attorney and defendant in person and by counsel appeared in open court, the report of the pre-commitment investigation was submitted to and considered by the court and the court having examined the same, pursuant to the verdict of the jury, rendered judgment to the effect that the defendant be sentenced and committed to the custody and control of the Warden of the Indiana State Prison for a period of not less than two (2) nor more than fourteen (14) years from said date, that he make his fine to the State of Indiana in the penal sum of $2500.00 and that he pay the costs of the prosecution. The court further found the defendant to be sixty (60) years of age. Thereupon the defendant moved the court to withhold execution of the sentence that the defendant might file appropriate motions for an appeal, which motion was by the court sustained and the execution judgment withheld pending the filing of the motions of the defendant.

Appellant's motion for a new trial consists of eleven pages of record and, therefore, in the interest of brevity only the

heading of the separate paragraphs of the grounds are shown here. Ground One reads as follows:

"Misconduct on the part of Juror, JOHN F. SMITH, as evidenced by the Affidavits of Janet Pavlaski and Bernard M. Tetek, filed herewith and made a part thereof and marked 'Exhibits 1 & 2,' in this, to-wit: Upon questioning by the Court, juror JOHN F. SMITH denied he was ever convicted of a felony."

Ground Two reads as follows:

"That the verdict of the Jury is not sustained by sufficient evidence."

Ground Three reads as follows:

"That the verdict of the jury is contrary to law."

Ground Four reads as follows:

"That error of law occurring at the trial as follows, to-wit:

The Court erred in overruling the objection of the defendant to the following question propounded by the Prosecutor during the direct examination of JERRY N. MAROULES, a witness called on behalf of the State of Indiana and admitting the answer thereto in evidence which question, objection, answer and the ruling of the Court thereon, are in the following words:

\* \* \* \* ."

Ground Five reads as follows:

"That error of law occurring at the trial as follows, to-wit:

The Court erred in overruling the objection of the defendant to the following question propounded by the Prosecutor during the direct examination of JERRY N. MAROULES, a witness called on behalf of the State of Indiana and admitting the answer thereto in evidence, which question, objection, answer and the ruling of the Court thereon, are in the following words:

\* \* \* \* ."

Ground Six reads as follows:

> The Court erred in overruling the objection of the defendant to the following question propounded by the Prosecutor during the direct examination of JERRY N. MAROULES, a witness called on behalf of the State of Indiana and admitting the answer thereto in evidence, which question, objection, answer and the ruling of the Court thereon, are in the following words:
>
> * * * *."

Ground Seven reads as follows:

> "That error of law occurring at the trial as follows:
>
> The Court erred in overruling the objection of the defendant * * *."

This again refers to the overruling of the objection of defendant and is of the same tenor as Four, Five and Six preceding this objection. Grounds Eight reads as follows:

> "That error of law occurring at the trial as follows, to-wit: * * *."

This objection again is of the same tenor as that heretofore set out in grounds numbered Four, Five and Six. Objection Nine:

> "That error of law occurring at the trial as follows, to-wit: * * *."

This objection again is of the same tenor to that propounded at grounds Four, Five, Six and Seven immediately preceding. Ground Number Ten reads as follows:

> "That the Court erred in overruling defendant's Motion for a finding of not guilty at the close of the State of Indiana's case."

Following the motion for a new trial a memorandum was filed therewith, which memorandum omitting heading, formal parts and signature reads as follows, to-wit:

## "MEMORANDUM

The defendant, HAROLD F. DeVAULT, has assigned as two specifications of his motion for new trial that the verdict of the jury is not sustained by sufficient evidence and that the verdict of the jury is contrary to law. Therefore, pursuant to Rule 1-14B of the Rules of the Indiana Supreme Court, the defendant attaches this memorandum to his motion for new trial specifically pointing out how such evidence is insufficient, and as a result, how the verdict of the jury based upon such evidence is contrary to law. The use of the term 'defendant' in this memorandum shall refer to HAROLD F. DeVAULT.

### THE CRIME CHARGED

The defendant was charged and convicted of the crime of conspiracy to commit forgery of the general purchase order for poor relief. Specifically, the defendant was accused of conspiracy with JERRY N. MAROULES, SONIA MOLES and JOHN BALEN (or BALENOVICH) to forge a Calumet Township Trustee purchase order dated November 19, 1962. This was the only unlawful act with which the defendant was charged.

The basic elements of the crime in question here, to-wit, conspiracy to commit forgery, are as follows:

1. Two or more persons must unlawfully conspire and unite with each other; and

2. To commit an unlawful, overt act.

In the case at bar, the State had to prove beyond a reasonable doubt that a conspiracy existed of which the defendant was a party, and that the object of the conspiracy was to commit the unlawful act of forging said general purchase order dated November 19, 1962, as issued to one JAMES MIXON.

### THE STATE'S EVIDENCE

Viewing the evidence most favorable to the State, no reasonable man can find from such evidence that: (1) Any such conspiracy as charged existed between defendant and any other of the State's witnesses, or (2) Even going further, that the defendant knew that the order in question was forged.

The testimony offered by the State to show the conspiracy charged in the indictment consisted of that given by the

alleged co-conspirators, MAROULES, MOLES, and BALEN (or BALENOVICH).

## TESTIMONY OF SONIA MOLES

Taking the testimony of each witness separately, witness SONIA MOLES testified substantially as follows.

She is one of the defendants in this case, and that in November, 1962, she was an order writer in the Calumet Township Trustee's office. She prepared orders from information given to her by supervisors in the township trustee's office who authorized disbursements to particular recipients.

State's Exhibit No. 1 is an order dated November 19, 1962, issued to a JAMES MIXON in the amount of Eighty-Five ($85.00) Dollars. Mrs. Moles stated that she prepared this order, using a rubber stamp to place the name of the Defendant, HAROLD F. DeVAULT, on it as the township trustee. The use of such a stamp, instead of obtaining the defendant's personal signature on it, was authorized by the Indiana State Board of Accounts as proper procedure for the issuance of orders by the township trustee's office in 1962. She did not consult with or have any conversation with Mr. DeVault as to this order.

After State's Exhibit No. 1 was filled out, it was sent to a grocer. Such orders were usually sent by mail, although before holidays, orders were sometimes taken to grocery stores by township trustee investigators.

Mr. Balen (or Balenovich) was an investigator for the defendant in November of 1962. The witness at first could not remember giving any orders directly to Mr. Balen. Upon being recalled to the stand, the witness stated that in November of 1962, she had issued purchased orders to John Balen (or Balenovich) which he took directly to JERRY MAROULES. She stated that she knew that the orders were phoney at the time that she issued them. She could not remember whether she received anything from Balen (or Balenovich) for such orders.

She never gave the defendant, HAROLD F. DeVAULT, any money, for State's Exhibit No. 1, nor even had a conversation with him about it.

The defendant, HAROLD F. DeVAULT, in November of 1962, had his office at a location other than the one at which the witness worked. He would come into her office location only occasionally.

## TESTIMONY OF JERRY N. MAROULES

Witness JERRY MAROULES testified that he was likewise a defendant in this case. In November of 1962, he was the owner of a retail grocery store at 2501 Adams Street, Gary, Indiana. At such time, he was doing poor relief business with the office of the Calumet Township Trustee Harold F. DeVault.

Maroules received poor relief purchase orders through the mail from the two (2) offices of the township trustee. These orders would be filled by having the intended recipients come into the grocery store and claim their merchandise.

In November of 1962, some orders were brought into the Maroules store by investigators from the trustee's office. He would split half of the amount of the orders with the investigators. He could not at first name any of the investigators he dealt with in November of 1962. Later, he said Balen (or Balenovich) was one of the investigators.

Witness Maroules signed State's Exhibit No. 1—the Poor Relief Purchase Order issued to James Mixon for Eighty-Five ($85.00) Dollars worth of groceries—as evidence of the delivery of such groceries to the named recipient. However in fact, he did not deliver any groceries to Mr. Mixon. He did not recall who gave him the order. The order was then submitted by the witness to the township trustee's office to be processed for payment. He was paid by check issued by the Lake County Auditor.

He had no conversation with the defendant, HAROLD F. DeVAULT, at any time concerning State's Exhibit No. 1. He did not conspire with Mr. DeVault to forge this order.

## TESTIMONY OF JOHN BALEN

Witness John Balen (or Balenovich) also indicated that he was a defendant in this case. In November of 1962, he was was an investigator for Calumet Township Trustee Harold F. DeVault. As investigator, he would check applications to see if the persons applying were entitled to poor relief.

The witness met Jerry Maroules while working for the trustee's office in 1962. Maroules ran a grocery store. The witness took poor relief purchase orders to Mr. Maroules' store in 1962. He would obtain for himself fifty (50%) per cent of the amount of such orders. He got such orders from township trustee order writer, Sonia Moles. No groceries were delivered on such orders as the names used were recipients who at one time had been entitled to poor relief,

but were not so entitled at the time the orders were issued on which the fifty (50%) per cent split applied.

Sonia Moles knew that the orders were phoney and she received Ten ($10.00) Dollars or Fifteen ($15.00) Dollars on occasion from witness Balen.

The witness never had a conversation with the defendant, Mr. DeVault, about any of the so-called phoney purchase orders. He never conspired with Mr. DeVault to forge any such orders.

### CONCLUSION

From a review of the foregoing evidence, it is apparent that the conviction of the defendant, HAROLD F. De-VAULT, can be only based upon guess or suspicion and not upon any substantial evidence. None of the State's witnesses indicated that they had any sort of conversation with Defendant DeVault or that he knew that the purchase order in question was forged. Defendant DeVault was not shown to have received any of the proceeds paid on such order.

The defendant's name was stamped on the particular order by an employee of his office who could use such stamp under procedures prescribed by the Indiana State Board of Accounts. The fact that such employee may have misused the duty of stamping the defendant's name, cannot, in and of itself, show that defendant was a part of an unlawful conspiracy. Defendant DeVault's conviction must be based upon more substantial evidence before a reasonable man could find him guilty of the offense charged.

Where, as here, a reasonable man could not find that the evidence has proved the defendant guilty beyond a reasonable doubt, then the verdict is not sustained by sufficient evidence and is contrary to law. *Finch* v. *State* (1967), 249 Ind. 122, 231 N. E. 2d 45; *Hale* v. *State* (1967), 248 Ind. 630, 230 N. E. 2d 432.

Our Supreme Court has clearly indicated that:

'A verdict based merely upon suspicion, opportunity, probability, conjecture, speculation, and unreasonable inferences of guilt gleaned from the vague circumstances in the record of the evidence . . . cannot be upheld. . . .' *Manlove* v. *State* (1968), 250 Ind. 70, 232 N. E. 2d 874."

To the motion for new trial filed by the appellant the State of Indiana filed its Answer which omitting heading, formal parts and signature reads as follows, to-wit:

## "ANSWER TO MOTION FOR NEW TRIAL

Comes now the State of Indiana, by Henry S. Kowalczyk, Prosecuting Attorney for the 31st Judicial Circuit, and by James F. Stanton, his Deputy, and for its answer to defendant Harold F. DeVault's Motion for New Trial, filed herein on November 19, 1968, says:

1. That there was no misconduct on the part of the juror, John F. Smith, as evidenced by the Affidavits of John F. Smith and Janet Pavlaski, filed herewith and made a part hereof and marked 'Exhibits A and B' and the State of Indiana denies that said juror was ever questioned by the Court as to whether or not he had ever been convicted of a felony.

2. That there is sufficient evidence to sustain the verdict of the jury.

3. That the verdict of the jury is not contrary to law.

4. That the Court did not err in making the rulings referred to in Paragraphs Four through Ten of defendant's Motion for New Trial.

5. That the Court did not err in overruling defendant's motion for a finding of not guilty at the close of the State of Indiana's case.

WHEREFORE, the State of Indiana prays that the Motion for New Trial be overruled."

The court overruled appellant's motion for new trial on the 8th day of April, 1969.

Appellant's Assignment of Error is the single specification reading:

"The Court erred in overruling Appellant's Motion for a New Trial."

The State called a total of six witnesses to testify in this case, the first of whom was James Mixon, the gentleman in whose favor the order here in question was issued. Mr. Mixon testified that he was not on relief at the time this order was issued, did not receive any of the food stuffs supposedly purchased thereunder or any money therefor and that the signature purportedly his, appearing on said purchase order, was not

his signature and that he had not signed the same. That was all the witness knew about the transaction.

Thereafter, the State called Bart Zandstra as a witness who appeared and took the stand and testified that he was the County Auditor of Lake County, Indiana, since January 1, 1963. That as Auditor he kept certain public records, including those relating to the Calumet Township Trustee's office. He identified State's Exhibit No. 2 as being a claim filed by the Calumet Township Trustee's office for Poor Relief. He testified that the notation made by his office on that form was:

"Merely this, this is merely an order for payment; when the claim is filed in our office, it's completed under the Advisory Board of Township Trustees. We examine the form, to check if it is complete, then the payment is made, if money is available.

Q. Do you have the date when this claim was filed?

A. Yes, sir, this claim was filed in November of 1962. We check the term, it does not necessarily need an exact time of payment, this does not necessarily need to state the exact time of payment, the reason being that we're not always aware when we can pay it; the approximate date is November, 1962.

Q. This claim was filed in November of 1962?

A. That's correct.

Q. You also keep, at the Auditor's Office, as public records, general purchase orders, is that correct?

A. General purchase orders are attached to the claim and these general purchase orders are examined by the Auditor's Office, in accordance with the law.

Q. I hand you State's Exhibit No. 1 and I'd ask you to identify it.

A. Yes, sir; I identify it as a Poor Relief Order claim, and it is our authority to recognize the claim.

Q. This was also kept in your office as public records?

A. This is correct."

Upon cross examination by defendant's counsel the following questions and answers were produced by the cross examination of this witness:

"Q. In regard to this State's Exhibit that the State showed you, Mr. Zandstra, would you, of your own knowledge, have a way of knowing whether he submitted this claim, or forged this, whether a forgery was committed?

A. I have no way of knowing.

Q. That's all—just a minute, I'll ask again. Would you have, of your own knowledge, would you know whether forgery was committed?

A. I have no way of possibly knowing."

The State then called to the witness stand Mr. Donald A. Wilhelm, who was a field examiner for the State Board of Accounts. This witness testified as to the general procedure followed in making investigations and then got to the case at hand. He testified that the signature on the voucher was not that of Mr. DeVault, in other words that Mr. DeVault did not sign it. In response to the question "You wouldn't say that he had conspired with some other person in regard to this voucher?" the witness said, "No, sir."

Appellant's co-defendants, Sonia Moles, Jerry Maroules and John Balenovich, had testified prior thereto and their evidence is summarized in the memorandum attached to the motion for a new trial and hence need not be here repeated.

The conspiracy statute under which the appellant was charged is found in Acts of 1905, Chapter 169, Section 641, page 584, being Section 10-1101, Burns Indiana Annotated Statutes, which reads as follows:

"Conspiracy to commit felony.—Any person or persons who shall unite or combine with any other person or persons for the purpose of committing a felony, within or without this state; or any person or persons who shall knowingly unite with any other person or persons, body, association or combination of persons, whose object is the commission of a felony or felonies, within or without this state, shall, on conviction, be fined not less than twenty-five dollars [$25.00] nor more than five thousand dollars [$5,000], and imprisoned in the state prison not less than two [2] years nor more than fourteen [14] years."

As stated in appellant's brief, the essentials necessary to constitute a conspiracy under the statute are stated as follows:

"In order to be a conspiracy there must be an intelligent and deliberate agreement to commit the offense charged. It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to do the acts and commit the offense, though the agreement is not manifest by any formal words. Concurrence of sentiment and cooperative conduct in an unlawful and criminal enterprise are the essential ingredients of criminal conspiracy There must be an agreement and there must be evidence to prove the agreement directly, or such a state of facts that any agreement may be legally inferred. Conspiracies cannot be established by a mere suspicion. Evidence of mere relationship or association between the parties does not show a conspiracy. *Couglin* v. *State* (1950), 228 Ind. 393, 92 N. E. 2d 718, 719; *Robertson* v. *State* (1952), 231 Ind. 368, 370, 108 N. E. 2d 711, 712; *Mattingly* v. *State* (1957), 237 Ind. 326, 338, 145 N. E. 2d 650, 656."

In summarizing it is apparent that the State must establish beyond a reasonable doubt that (1) the accused agreed and united with another person or persons for the purpose of committing the felony described in the indictment and not another offense unspecified in the charge. *Johnson* v. *State* (1935), 208 Ind. 89, 194 N. E. 619; *Shonfeld* v. *State* (1942), 219 Ind. 654, 40 N. E. 2d 700; *Mattingly* v. *State* (1957), 237 Ind. 326, 145 N. E. 2d 650. (2) The conspiracy with which the accused is charged is based upon more than just suspicion of guilt. Thus, the showing of a mere relationship or association between the accused and others is not enough to sustain a conviction. *Coughlin* v. *State* (1950), 228 Ind. 393, 92 N. E. 2d 718; *Mattingly* v. *State* (1957), 237 Ind. 326, 145 N. E. 2d 650; *Scott* v. *State* (1958), 238 Ind. 667, 154 N. E. 2d 107; *Hutcheson* v. *State* (1963), 244 Ind. 345, 192 N. E. 2d 748.

In the case at bar there was no evidence whatever to show the existence of a conspiracy on the part of the appellant and any of the witneses. No conversations took place between the

alleged co-conspirators and the appellant with regard to such purchase order; the appellant did not sign it; the appellant did not share in any of the proceeds obtained from it; and there is nothing in the record to indicate that appellant ever knew of the existence of such order until after the indictment in this case was returned. Furthermore all of the alleged co-conspirators specifically denied that they conspired with the appellant to forge the purchase order which was the subject of the indictment against the appellant. They also testified that there was no discussion by them or either of them and the appellant with respect to the purchase order here involved.

The State for reasons best known to the prosecuting attorney saw fit to place co-conspirators upon the stand to testify against the appellant, having done so the State in effect vouched for the accuracy and truth of the testimony to be adduced by those witnesses and is thereby bound by their evidence. In fairness to the State we wish to state that there was no attempt on the part of the State to impeach the testimony of these witnesses and therefore the evidence of such witnesses stands unchallenged.

This Court has previously held "A verdict based merely upon suspicion, opportunity, probability, conjecture, speculation, and unreasonable inferences of guilt gleaned from the vague circumstances in the record of the evidence * * * cannot be upheld and must be reversed." *Manlove* v. *State* (1968), 250 Ind. 70, 232 N. E. 2d 874; *Durham* v. *State* (1968), 250 Ind. 555, 238 N. E. 2d 9.

Other errors and irregularities raised by the motion for a new trial need not and are not here considered for the reason that the record in this cause requires that the judgment of the trial court be reversed and remanded.

This cause is, therefore, reversed and remanded to the trial court with instructions to grant appellant's motion for a new trial.

Arterburn, DeBruler and Givan, JJ., concur; Hunter, C.J., dissents.

Note.—Reported in 261 N. E. 2d 232.